Thomas Lee RINGO, Appellant,

v.

GULF STATES UTILITIES
COMPANY, Appellee.

No. 8115.

Court of Civil Appeals of Texas,
Beaumont.

May 18, 1978.

Rehearing Denied June 8, 1978.

**32**

Waldman & Smallwood, Beaumont, for appellant.

Larry L. Germer, Beaumont, for appellee.

CLAYTON, Justice.

Plaintiff below, Thomas Lee Ringo, filed this suit against Gulf States Utilities Company, for personal injuries resulting from various acts of negligence.

On January 31, 1975, plaintiff (then sixteen years of age) was working in the course and scope of his employment with Sparks Industrial Service, Inc., at his employer's place of business when he was caused to suffer a severe electrical shock and resulting injuries to his body.

Plaintiff was engaged in cleaning and painting railroad cars for his employer, and, in order to gain access to the inside of the railroad cars, he had to put a ladder into the opening on top of said cars. He lifted an aluminum ladder to fit it into the opening at the top of the car, and the ladder came near or into contact with an uninsulated electrical wire which had been strung by Gulf States across the lot on which plaintiff was working.

Defendant Gulf States filed a general denial and thereafter filed a third party action against plaintiff's employer, Sparks Industrial Service, Inc., and a cross action against plaintiff. The trial court granted defendant's motion for summary judgment, and from this judgment plaintiff appeals.

By deposition testimony it is shown that upon the premises occupied by plaintiff's employer, Sparks, a line of railroad tracks was extended in the latter part of 1974, and several months later a new line was built parallel to this track. Sparks, the owner, was aware that the extension of the existing line would cause the tracks to go under high voltage electric lines. Because this work was contemplated, Sparks called Gulf States and had them raise the line over the first track that was extended. The line was raised in response to his request. At the time this request was made of Gulf States, Sparks did not know that he was to build the second track, and the second track was never mentioned to Gulf States. The injury to plaintiff occurred while working on the boxcar on this new track.

The question before this court is whether or not the summary judgment proof establishes as a matter of law that there is no genuine issue as to any material fact. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); *Smith v. Ortman-McCain Co.*, 537 S.W.2d 515, 518 (Tex.Civ. App.—Austin 1976, writ ref'd n.r.e.).

■ Plaintiff contends that a material fact issue is presented as to whether defendant breached a statutory duty by placing its power line below the required height. According to plaintiff's brief, *Tex. Rev.Civ.Stat.Ann. art. 1436a, § 1* (Supp. 1978) requires the height of the lines, for the voltage involved here, to be twenty-eight feet. This height requirement is not challenged by defendant. In the record is an undated chart entitled "Clearance Check 4-W Primary Service," which lists various heights for the wires crossing over the railroad tracks here involved. This chart shows that at several points over the tracks, the wires were below the twenty-eight feet. However, this chart does not clearly indicate the height of the wires at the point of the accident. Sparks, in his deposition, estimated the height of the wire or line at ten feet above the top of the boxcar, which he said was fifteen feet high. This evidence presents and raises a genuine fact issue as to the height of the electric lines. Defendant practically concedes this point in its brief wherein it is stated, ". . . for purposes of this Motion for Summary Judgment, it may be assumed that fact issues might have existed establishing negligence. This is of no significance since the statute in question and provisions as to responsibility would not come into play unless there were an issue of negligence on the part of the utility company."

The real thrust of defendant's argument as to its defense to plaintiff's cause of action and the proper granting of the summary judgment is that plaintiff is barred from recovery by the provisions of *Tex.Rev.Civ.*

*Ann. art. 1436c* (Supp.1978) (hereinafter referred to as the Act), which provides as follows:

"Sec. 7(b). If a violation of this Act results in physical or electrical contact with any high voltage overhead line, the person, firm, corporation, or association violating the provisions of this Act shall be liable to the owner or operator of such high voltage line for all damage to such facilities and for all liability incurred by such owner or operator as a result of any such contact."

It is defendant's contentions that plaintiff, having caused the ladder with which he was working to come in contact with the high voltage lines, violated *art. 1436c, § 3.* Defendant further contends that because of such violation, the plaintiff, under the provisions of *art. 1436c, § 7(b),* quoted above, would be liable to defendant for any liability incurred by defendant. Thus, defendant argues, in the event that defendant is found to be negligent and found to be liable to plaintiff, defendant would be entitled by virtue of the statute [*art. 1436c, § 7(b)*] to recover back from plaintiff the amount of its liability. Defendant further argues that, in order to avoid this circuitry of action, plaintiff should as a matter of law be denied recovery from defendant in the first instance.

To determine if plaintiff has violated *art. 1436c,* we must look at all of the provisions of the statute. *Sec. 3* of *art. 1436c* provides:

"Unless danger against contact with high voltage overhead lines has been effectively guarded against pursuant to the provisions of Section 6 of this Act, no person, firm, corporation, or association shall require any employee to perform and no person, firm, corporation, or association shall, individually or through an agent or employee, perform any function or activity upon any land, building, highway, or other premises if at any time during the performance of any function or activity, it is possible that the person performing the function or activity shall move or be placed within six feet of any high voltage overhead line or if it is possible for any part of any tool, equipment, machinery, or material used by such person to be brought within six feet of any high voltage overhead line during the performance of any such function or activity."

*Sec. 6* of *art. 1436c* provides:

"When any person, firm, or corporation desires to temporarily carry on any function, activity, work, or operation in closer proximity to any high voltage overhead line than permitted by this Act, the person or persons responsible for the work to be done shall promptly notify the operator of the high voltage line. The work shall be performed only after satisfactory mutual arrangements have been negotiated between the owner or the operator of the lines or both and the person or persons responsible for the work to be done for temporary mechanical barriers separating and preventing contact between material, equipment, or persons and high voltage electric lines, temporary de-energization and grounding, or temporary relocation or raising of the lines. The actual expense incurred by any operator of high voltage lines in providing clearances as above set out shall be paid by the person or persons responsible for the work to be done in the vicinity thereof and the operator of the lines may require such payment in advance, such operator being without obligation to provide such clearance until such payment shall have been made. Should the actual expense be less than the payment made the difference shall be refunded. The operator of the lines shall be given not less than 48 hours' advance notice to arrange for such temporary clearances."

*Sec. 7* provides for a fine or confinement in jail for any person who violates any provisions of this Act.

One of the general rules followed in construing legislative enactments is that a statute "should not be given a construction that would produce results so contrary to public justice if it can reasonably be given a construction that will not do so. This is

because of the rule that a statute will not be construed so as to ascribe to the Legislature an intention to do an unjust or an unreasonable thing, if such statute is reasonably susceptible of a construction that will not accomplish such a result." *Anderson v. Penix,* 138 Tex. 596, 161 S.W.2d 455, 458–59 (1942); *accord, Trimmier v. Carlton,* 116 Tex. 572, 296 S.W. 1070 (1927); *Winder v. King,* 1 S.W.2d 587, 589–90 (Tex.Comm'n App.1928, jdgmt. adopted).

██ It is a settled rule that where a statute is plain and unambiguous it will be enforced according to its words. On the other hand, it is a rule in this State, and the rule generally, that "In construing statutes it is the duty of the court to ascertain the Legislative intent, and, when such intent is once arrived at, it should be given effect; in fact, such intent is the law." *Anderson v. Penix,* supra, 161 S.W.2d at 459, quoting *Popham v. Patterson,* 121 Tex. 615, 51 S.W.2d 680, 683 (1932).

The obligation or duty provided for in *Sec. 6* of the Act applies specifically to the person, firm, or corporation desiring to temporarily carry on any function, activity, work, or operation in closer proximity to any high voltage overhead line than permitted by this Act. The party responsible for the work to be done shall promptly notify the operator of the high voltage line. The work shall be performed only after satisfactory mutual arrangements have been negotiated between the owner or operator of the lines and the person or persons responsible for the work to be done. The actual expense incurred shall be paid by the person responsible for the work to be done.

██ It is clear that the obligation to comply with the provisions of *Sec. 6* is that of plaintiff's employer, Sparks, and not of the plaintiff, the individual workman. It is clear from the wording of this section of the statute that the obligation of compliance therewith cannot be that of the plaintiff because he has no authority to act for his employer in negotiating with Gulf States and no authority to bind his employer, Sparks, in an agreement to pay the expenses for any work to be done as provided for in *Sec. 6.* This being correct, then a violation of *Sec. 6* can only be committed by Sparks, and not this plaintiff.

██ Holding, as we do, that plaintiff has not violated *Sec. 6* of the Act, then the question is whether plaintiff has violated the provisions of *Sec. 3.* In order to prove a violation of this section of the Act there must be a showing of more than the mere fact that plaintiff performed a function when it was possible that he, plaintiff, would move or be placed within six feet of any high voltage line or for it to be possible for any part of any tool, equipment, or machinery used by plaintiff to be brought within six feet of such lines. According to the express wording of this section, there is no violation "[u]nless danger against contact with high voltage overhead lines has been effectively guarded against pursuant to the provisions of Section 6 of this Act . . .." The gravamen of the offense or violation is the failure to comply with the provisions of *Sec. 6,* and, as we have previously noted, this violation can only be committed by the employer and not this plaintiff. We hold, therefore, that this violation not being committed by or attributable to this plaintiff, then the violation complained of in *Sec. 7(a)* and *(b)* is not a violation by the plaintiff which could subject him to criminal penalties and the civil penalty of not only barring him from recovery, but actually being liable for damages to Gulf States. To hold otherwise would permit Gulf States to be free of liability from its own negligent acts (assuming negligence on its part) and to bar a recovery by plaintiff even though he was completely free of negligence. In this instance we believe the following rule of construction of the statute is applicable: ". . . if a statute creates a liability unknown to the common law, or deprives a person of a common law right, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview." *Satterfield v. Satterfield,* 448 S.W.2d 456, 459 (Tex.1969); *accord, Cafeterias, Inc. v. System-Master, Inc.,* 490 S.W.2d 253, 256 (Tex.Civ.App.— Austin 1973, no writ).

*Art. 1436c* was enacted by the Legislature for the stated purpose of helping to insure the safety of persons engaged in activities near high voltage lines. We know of no reason for holding that the purpose of the Legislature in enacting *Sec. 3* as a part of the law enunciated in *art. 1436c* was to give the utility company some advantage in this type of case which they did not enjoy at common law. This holding does not render the statute nugatory or futile. The violation by the person owing the duty to comply with *Sec. 6* is subjected to criminal and civil penalties not heretofore imposed.

Under the facts of this case, we are of the opinion a genuine issue of fact as to defendant's negligence has been raised, and *art. 1436c* does not bar this plaintiff from recovery for his damages under proper proof. In view of our disposition of this appeal, we do not consider the other points urged by plaintiff.

The trial court was in error in granting defendant's motion for summary judgment. The judgment of the trial court is reversed and the cause remanded for trial.

REVERSED and REMANDED.

KEITH, J., not participating.